**HOOPER v. COURTNEY.**

No. 6213.

Court of Civil Appeals of Texas.   Amarillo.
March 31, 1952.

Rehearing Denied Sept. 8, 1952.

Crenshaw, Dupree & Milam, Lubbock, Joe L. Cox, Plainview, for appellant.

P. B. Randolph and LaFont & Tudor, Plainview, for appellee.

MARTIN, Justice.

Appellee, M. E. Courtney, and J. C. Hooper, father of appellant, Robert Hooper, were stockholders in a corporation known as the Plainview Refining Company.

Appellee had invested approximately $9,650 in stock of the corporation and at a later date, the corporation being in failing condition, advanced it $3,000 in cash, for which he was to receive stock, but this stock was not delivered. Appellee Courtney and J. C. Hooper held a note against the corporation in the sum of approximately $7,650, plus interest and charges, and appellee had advanced approximately $4,650 of this loan amount and J. C. Hooper had advanced $3,000 of said amount. The corporation likewise owed a note to the Hale County State Bank for approximately $4,000 secured by a lien.

During August, 1936, the Hale County State Bank was preparing to foreclose on its $4,000 note and lien and appellee, M. E. Courtney, entered into an agreement with J. C. Hooper for appellant, Robert Hooper, to buy the refinery in at the foreclosure sale for the purpose of protecting the respective interests of appellee and J. C. Hooper. Appellee and J. C. Hooper were to put $2,000 each into the purchase of the refinery at the foreclosure sale. Appellant, Robert Hooper, owned no stock in the corporation and had no interest in the business at all but according to his testimony "was induced to match Mr. Courtney's $2,000 to represent his father's interest and go in there and protect it to that extent." Appellee Courtney delivered to appellant $2,000 to protect his interest and appellant also put up $2,000 to protect his father's interest. A written trust agreement was executed whereby appellant was to buy in the refinery and hold the title to said property "in trust for the said M. E. Courtney and J. C. Hooper * * *."

Appellant bought in the property at the foreclosure sale and received a deed to the same and shortly thereafter sold the refinery off the property for $2,500 and delivered $1,250 to appellee and $1,250 to his father, J. C. Hooper. Sometime following this transaction J. C. Hooper died and his will devised all of his estate to his wife, Addie Lee Hooper, who was appointed independent executrix. Appellant leased out the 20 acres of land for farming for several years and collected the farm rents and paid the taxes on the land and also paid a debt of some $300 secured by a lien to the Southwestern Life. Appellant also sold 3.2 acres out of the 20 acre tract and placed the $1,000 consideration in a government bond. Appellee testified this sale was by his agreement and consent. Appellant also rented the land for $600 per year to the Compress and collected two such $600 rental checks. These $600 rental checks were not cashed by appellant who still held the same at the time of trial of the case.

Appellee went to appellant, Robert Hooper, for a settlement of the amount received by appellant from the sale of the 3.2 acres and also sought a division of the rents. Appellee had removed a sheetiron warehouse from the premises about the time of the sale of the refinery from the land. Appellee contended that he removed this warehouse with permission of J. C. Hooper and this contention was sustained by the jury. The jury also found the value of such building to be only $200. Appellant did not pay any of the rents to the appellee or any portion of the consideration from the sale of the 3.2 acres of land and testified that he told appellee "If you are going to keep the warehouse I will just keep the land and we will wipe the slate clean from here." Appellee's testimony is that appellant never refused to settle the trust estate, or repudiated the trust agreement, at any time but kept delaying the matter and putting him off as to a settlement.

Appellee on February 8, 1951, purchased all of the interest of Addie Lee Hooper in and to the trust property for a consideration of $500 and received a quitclaim deed to such interest. Appellee filed suit for an accounting of the funds derived from the trust property and for his interest in the land subject to the trust. Appellant sought to hold $2,397.63 derived from rents and from the sale of the 3.2 acres of land, which sum was in addition to the $1,250 he delivered to his father, and further contended he had repudiated the written trust agreement and that he held title to the 16.8 acres of land under the five year statute of limitation.

The cause was tried before a jury and upon a verdict being returned the trial court set aside certain of the jury findings con-

cerning the Addie Lee Hooper interest and appellant's asserted repudiation of the written trust agreement and perfection of title thereto under the five year statute of limitation, Article 5509, Vernon's Annotated Texas Civil Statute. On the remaining jury issues and evidence in the cause, the trial court rendered judgment for the appellee for a proportional part of the funds held by the appellant as well as for an interest in the 16.8 acres of land and the land was ordered sold and the proceeds divided according to the judgment. Appellant perfected an appeal from this judgment and asserts 25 points of error. The appeal is principally concerned with the court's action in setting aside the jury findings on repudiation of the written trust agreement as to Addie Lee Hooper and as to whether the five year statute of limitation applies to such interest. The 25 points will be grouped for brevity and convenience and those points essential to a determination of the appeal will be discussed herein.

■ Appellant's first point is that the appellee does not come into a court of equity with clean hands in seeking to enforce the written trust agreement, in that he was a stockholder of the corporation and by having the same bid in at the sale by the appellant sought to wipe out the claims, debts and liens of other creditors of the corporation as well as the rights and claims of the minority stockholders. Appellant was neither an officer, director, stockholder or creditor of the corporation and had no interest as would entitle him to attack as fraudulent the purchase of the property under the trust agreement. Bunn v. Mackin, Tex.Civ.App., 25 S.W.2d 942; Cook, Supt. of Banks v. Ball, 7 Cir., 144 F.2d 423, syl. 21; Arn v. Bradshaw Oil & Gas Co., 5 Cir., 108 F.2d 125, syl. 4; 76 A.L.R. p. 457.

■ Appellant's point 2 is that the court erred in admitting appellee's answer of "No sir" to the following question: "Did he (Bob Hooper) ever say anything that indicated to you that he was claiming this land as his own?" This evidence was admitted in rebuttal of testimony of the appellant that he claimed the land shown in the trust agreement as his own. This testimony was a mere repetition of other evidence in the cause to the effect that appellant had not repudiated the trust or asserted any right to the land as against appellee and no harm could have accrued to the appellant as the gist of all the evidence presented by appellee was to the same effect. Rule 434, Texas Rules of Civil Procedure; Cooper v. State, 23 Tex. 331–339. Appellant's second point is overruled.

■ Appellant's third point is that the court erred in permitting the appellee to testify that Mrs. Hooper knew nothing about the trust property whatsoever. To the same effect in substance is Mrs. Hooper's purported statement to appellant as injected by appellant in his testimony that Mrs. Hooper had stated to him that she had no part in the trust deal and wasn't interested in it at all. If she had no interest in the trust matter, it appears a sound inference that she would have known very little about the same. Appellant points out that appellee's statement as to what Mrs. Hooper told him was the only evidence in the record that Mrs. Hooper knew nothing about the trust property. It must be likewise noted that the only testimony as to Mrs. Hooper's lack of interest in the property is the self-serving declaration of appellant as Mrs. Hooper was not produced at the trial of the cause and it was not shown that she was then deceased. Since appellant likewise introduced hearsay testimony of like character as that introduced by appellee no harm accrued to him of such nature as requires the cause to be reversed. Appellant's third point is overruled.

■ Appellant's fourth point complains of admission of appellee's testimony that one Raper was not close enough to hear the conversation between appellant and appellee in regard to the trust property. Since appellee had testified Raper was not present at the conversation between appellee and appellant this evidence was not of such a nature as to require a reversal of the cause under Rule 434. Appellant's fourth point is overruled.

Appellant's fifth point complains of exclusion of the testimony of W. J. Mc-Williams as to the value of the land in 1938 and 1939 and is overruled as the trial court was authorized in his discretion to exclude such testimony in that the witness was not qualified as an expert to set the value of the land. Further, the jury found appellee removed the warehouse with J. C. Hooper's consent, so it would be harmless error to exclude evidence that the land and warehouse were of approximately the same value as such evidence was introduced merely to lend credence to appellant's statement, "If you are going to keep the warehouse I will just keep the land." Since appellant had no right to predicate his holding of the land on appellee's failure to return the warehouse because if appellee had a legal right to retain the same the value of the warehouse as compared to the land would lend little credence to appellant's asserted statement.

During the development of testimony as to a request made by appellee to appellant for a settlement of the trust estate and upon the issue of whether appellee had requested a settlement of the trust estate and as to whether appellant had refused to make a settlement of the trust estate as required by the written trust agreement certain items of testimony in this regard were of the nature of evidence of a compromise. The line of distinction was recognized by the trial court as between evidence bearing on a request for final settlement of the trust estate, which evidence was admissible, and evidence of offers to compromise on a settlement of the trust estate, and the jury was instructed not to consider any item of compromise. The line of distinction between the admissible and inadmissible testimony was somewhat narrow and any error as to such testimony being brought into the trial was cured by the court's instruction to the jury and withdrawal of all items as to a compromise settlement of the trust estate as distinguished from evidence that appellee sought a final settlement of the trust estate and that appellant dallied over such a settlement. Appellant's point 24 asserting that the evidence of compromise as introduced before the jury was not cured by a withdrawal of the same from the jury is overruled. Further, such evidence as withdrawn was not of such a nature, in the light of all the testimony surrounding this issue, as to cause harm to the appellant. Rule 434, Vernon's Texas Rules of Civil Procedure.

As to the preceding five points discussed in paragraphs above, the appellant in the trial of the cause aptly expressed the law which should govern such points as follows, "Sauce for the goose is sauce for the gander," in that said issues are concerned with evidence of the same character injected by both parties, and such evidence being of no great probative force and in some instances rendered harmless by the jury findings in the case.

Appellant's sixth, seventh and eighth points assert error in regard to the court's defining of the words "repudiate" and "repudiation" under the contention that such definitions do not permit the jury to consider anything other than a direct repudiation and do not permit the jury to consider acts and conduct of the appellant as constituting a repudiation of the written trust. The eighth point also goes a bit further and asserts that the court did not permit the jury to consider whether Mrs. Hooper had knowledge of such facts as would put an ordinarily prudent person on notice and inquiry of such repudiation.

Under the term "repudiation" the trial court set forth the elements of rejection, renunciation and disavowal of M. E. Courtney's rights by the appellant and further added to such definition—"or that the facts and circumstances were such as to put M. E. Courtney on notice of said repudiation, renunciation and disavowal, and the same explanation would apply to the repudiation of the rights of Addie Lee Hooper." It might be aptly observed that in the absence of a direct verbal repudiation usually the acts of repudiation as putting the cestui que trust on notice of a repudiation are likewise the acts repudiating the trust. The above definition submitted by the trial court is taken from Cortimeglia v. Davis, Com.App., 116 Tex.

412, 292 S.W. 875, and in the light of the entire charge is sufficient. The trial court was not authorized to single out certain items of the evidence and charge with respect to the same as outlined by appellant's objection to the charge discussed under his sixth point of error as follows, "A conveyance of a portion of the land in controversy, a recording of the deed and the taking of actual, open and visible possession of the property by the purchaser constituted in law notice of repudiation sufficient to bind Mrs. Hooper or put her on notice of repudiation," as such a charge singles out items of evidence and is clearly a charge on the weight to be given to the evidence. The italicized language meets appellant's objections to the charge as to constructive notice to appellee Courtney.

As to the sixth, seventh and eighth points set forth above, it is further noted that appellant should not be heard to complain as to a charge as to constructive notice of repudiation by acts and conduct as to the appellee Courtney in that appellant contends that his own testimony shows a direct verbal repudiation of the trust as to Courtney. As to appellant's contention on the issue of repudiation wherein Mrs. Addie Lee Hooper was named, it is noted that the trial court, in the light of appellant's denial that he testified to a direct repudiation as to his mother, Mrs. Hooper, correctly instructed the jury as follows: "Supplemental Special Issue C. Do you find from a preponderance of the evidence that Mrs. Addie Lee Hooper was in possession of sufficient facts that by diligent inquiry she could have ascertained that Robert E. Hooper had repudiated her rights in the land in controversy, if you have found that he did repudiate such rights?" The trial court also further instructed the jury by Special Issue No. 20 as to the five year statute of limitation. The court's charge was adequate on the issue of appellant's repudiation of the trust agreement both as to the asserted direct verbal repudiation by appellant as to appellee Courtney and also as to appellant's asserted constructive notice to his mother of his repudiation of the written trust

agreement. It is further noted that if the court's charge in any way misled the jury on the issue of repudiation by appellant of Mrs. Hooper's rights, appellant suffered no harm as the jury in answer to Special Issue No. 16 found that appellant had repudiated the trust as to Mrs. Hooper. Rule 434, supra. Appellant's points 6, 7 and 8 are overruled.

Appellant by his point 9 asserts that J. C. Hooper had relinquished to appellant his claim and right in the land subject to the trust. By point 10 appellant asserts that Mrs. Addie Lee Hooper likewise relinquished her claim and right to such land to him. Appellant's contention is that "such relinquishments, though verbal, yet appellant having remained in possession of the land cultivating, using and enjoying the same and paying taxes thereon before delinquency for a period of five years, his deed to the land being duly registered, was entitled to claim the five year period of limitation as a defense against the claim of appellee to the J. C. Hooper interest."

Leonard v. Cleburne Roller Mills Co., Com.App., 239 S.W. 605, syl. 3–4 and King v. Plainview Nat. Farm Loan Ass'n, Tex.Civ.App., 100 S.W.2d 434, cited by appellant on the above issues as to relinquishment, turn upon the issue of notice of rights as afforded by possession of land. A donor and donee are under the rule as follows: "Possession is equivalent to registration, in that it gives constructive notice of the possessor's rights." 43 Tex.Jur. p. 661, Sec. 389. It is here recognized that possession generally is notice of the rights of the person in possession in situations other than that of donor and donee. But, in the cause at issue where possession was taken under a written trust agreement unless the appellant repudiated the trust and brought notice of such repudiation to the appellee, neither appellant's possession nor the registration of his deed was notice of his adverse holding of possession as against the appellee. 43 Tex.Jur. p. 663, Sec. 390; Costley v. Gracy, Tex.Civ.App., 52 S.W.2d 920; King v. Lane, Tex.Civ.App., 186 S.W. 392, err. ref.

It is unquestioned that appellant entered into possession of the land in issue solely under and by reason of a written trust agreement. As far as Courtney is concerned, in the absence of a repudiation of the trust and notice to him thereof, appellant's possession under the trust agreement would be no notice to him that appellant was claiming title to any part of the land by a verbal relinquishment or gift of same from either J. C. Hooper or from Addie Lee Hooper. Appellant's possession of the land as trustee would be in subordination to the title of the true owners and consistent with the trust agreement. Appellee would not be put on notice of any adverse claim by appellant's mere possession and the conveyance by Addie Lee Hooper to appellee of the original J. C. Hooper interest would pass title to the same to appellee free of any asserted claim of the appellant as procured by the asserted relinquishment in so far as appellant's contention of notice is based on possession alone.

An examination of appellant's brief again reveals, "where a parol gift is accompanied by the donee's actual possession for the statutory period, with claim of ownership, such possession will ripen into title precluding recovery of the land *by the donor.*" Under such rule a relinquishment to the donee in actual possession or a gift of the land by donor to donee might bar the donor, but if such possession were held under a trust agreement *possession alone* would be no notice to appellee, a party to the trust agreement. (Italics added).

■ However, appellee took the J. C. Hooper title by quitclaim deed and such deed would put appellee on notice of any outstanding equities between appellant and Mrs. Hooper, grantor in appellee's quitclaim deed. But under the rule as to a quitclaim deed it must be recognized that there is another element which is fatal to appellant's points 9 and 10 on relinquishment. An examination of the statement of facts reveals the evidence is not of sufficient probative force to support appellant's claim of a verbal relinquishment by either J. C. Hooper or by Addie Lee Hooper even

accepting appellant's statements thereon— said statements being the only testimony on such claimed relinquishments. The trial court did not err in refusing to submit appellant's requested issues as to relinquishment. Appellant's points 9 and 10 are overruled.

■ Appellant's points 11, 12 and 21 in so far as they complain of the evidence being insufficient to support the jury verdict on issues supporting appellee's recovering his original interest in the trust property are overruled as the evidence in the cause supports the answers of the jury to the issues under which appellee recovered his original interest in the land and rents.

The disposition of the above points brings the cause to the essential issue of the controversy between appellant and appellee. The jury returned into court their answers to special issues Nos. 16, 17, 20, 21 and Supplemental Special Issues C and D and such answers supported appellant's contentions as to the J. C. Hooper interest. The trial court found the evidence insufficient to support these findings of the jury and set the same aside and found upon the verdict of the jury as not set aside and upon the evidence before the court that appellant did not repudiate the trust agreement as to appellee or as to Mrs. Addie Lee Hooper. The effect of this ruling was to vest the J. C. Hooper interest in the appellee.

■ Points Nos. 13, 14, 16, 17, 18 and 19 assert error of the trial court in setting aside the jury answers to the above issues and in rendering judgment for the appellees, and such issues also assert error of the trial court in that such jury answers were set aside and judgment rendered for appellee without motion as required by Rule 301, Vernon's Texas Rules of Civil Procedure. The record, other than the judgment, shows no motion and no service of notice, nor does the judgment recite any motion, notice and service of notice or the appearance of the appellant for a hearing on such motion, or any facts which might sustain the theory of a waiver of such motion or service. Such points above, in so far as

they complain of lack of motion in setting aside such jury issues and rendition of judgment notwithstanding such issues, require that the judgment of the trial court be set aside but only as to such action as was had without motion but a new trial is not required of the proceedings prior to the receipt of the jury's verdict, but only of the proceedings subsequent thereto. Rule 301, Vernon's Texas Rules of Civil Procedure; Greathouse v. Texas Public Utilities Corporation, Tex.Civ.App., 217 S.W.2d 190, syl. 5-6; Wheeler v. Wallace, Tex.Civ. App., 167 S.W.2d 1043; Johnson v. Woodman of the World Life Ins. Soc., Tex.Civ. App., 203 S.W.2d 331; Hines v. Parks, Com.App., 128 Tex. 289, 96 S.W.2d 970.

■ One further issue not concerned with action of the court subsequent to the jury verdict is presented by appellee's brief and should be clarified in this opinion Appellee asserts that only the ten year statute of limitation is applicable to the cause and that the five year statute of limitation, Article 5509, is not applicable in that appellant is holding under the written trust agreement and deed and that the same should be construed as one instrument. Appellee draws an analogy to the three year statute of limitation as set forth in St. Louis Union Trust Co. v. Harbaugh, Tex.Civ. App., 205 S.W. 496. Appellee further contends that if the five year statute does not apply to the situation, then all jury findings in regard to the Addie Lee Hooper interest become, as a matter of law, immaterial and of no consequence. An examination of the cause in the light of this contention reveals that such contention is a correct summation if only the ten year statute of limitation applies. But under proper evidence, and a vital element of such evidence is proof of a repudiation of the trust agreement by the trustee and notice thereof to the cestui que trust, the five year statute of limitation, Article 5509, will apply to adverse possession under a deed given in creation of a trust. Article 5509, Vernon's Annotated Texas Civil Statutes; Neal v. Pickett, Com. App., 280 S.W. 748, syl. 9-12; Neyland v. Bendy, 69 Tex. 711, 7 S.W. 497, syl. 2; Rosborough v. Cook, 108 Tex. 364, 194 S.

W. 131, second case; Covey v. Knight, Tex. Civ.App., 215 S.W.2d 684, syl. 11; Empire Gas & Fuel Co. v. Albright, Com.App., 126 Tex. 485, 87 S.W.2d 1092, syl. 6-7; Jones v. Siler, Com.App., 129 Tex. 18, 100 S. W.2d 352. It is not ruled at this time that the five year statute of limitation does, or does not, apply in this cause but this ruling merely disposes of the contention vigorously discussed in both the brief of appellant and the appellee as to whether only the ten year statute may be applicable to a claim of limitation under a deed executed under a written trust agreement.

Nor is any opinion expressed here as to the ruling of the trial court on the issues of fact concerning repudiation as to Addie Lee Hooper or as to the trial court setting aside the answers of the jury to issues 16, 17, 20, 21 and supplemental issues C and D, other than such action being without motion, as the cause is remanded for action by the trial court on those proceedings subsequent to the receipt of the jury verdict. Since the cause is remanded as herein outlined, the future action of the trial court on such issues is a matter on which no ruling can be made in this court in advance of, and in anticipation of, the ruling of the trial court to be made hereinafter. Other issues than those numbered in this paragraph are dependent upon the future action of the trial court and for that reason points 15, 20 and 25 are likewise not ruled on herein.

Appellant by his 22nd point of error complains of the trial court adjudging the land incapable of partition and ordering the same sold. Appellant by his 23rd point of error complains as to a division of the proceeds received from the trust property and alleges that the court erred in not granting him the sum of $429.18 as he asserts that his undisputed interest in the trust property and the proceeds thereof was 40/233rds thereof.

The above points will be dealt with together as they are disposed of under the same principle of law. Appellee apparently concedes that appellant had an interest or title in the trust estate and appellant asserts in his point 23 that he had an undisputed interest of 40/233rds in the trust prop-

erty and proceeds of sale thereof. It appears to be a sound view that all parties will admit that any agreements between appellant and appellee and J. C. Hooper as to the trust property were finally merged in the written trust agreement shown in the record and that the right, title or interest of any party in the trust property must arise out of this written trust agreement. An examination of this instrument reveals that only appellee and J. C. Hooper were vested with title to the trust property. It would be difficult to find any more express language than that shown in the trust agreement as follows: "And the said Rob't E. Hooper hereby acknowledges that he will hold title to said property in trust for the said M. E. Courtney and J. C. Hooper, and hereby agrees that he will transfer the title to all of such property upon demand being made upon him by said parties."

Since the written trust agreement vested no title in appellant as to the trust property he cannot rightfully complain as to the same being ordered sold by the court nor can he rightfully assert under the written trust agreement a vested interest of $^{40}\!\!/_{88}$rds in the property and its proceeds. His points 22 and 23 are accordingly overruled.

Rule 301 and Article 2211, Vernon's Annotated Civil Statutes, are identical and Hines v. Parks, Com.App., supra, defines the line of procedure in the trial court as to entry of judgment non obstante veredicto.

Appellant's points specifically overruled herein are outlined above and are referred to as to the rulings made. Under the rules herein set forth, points 13, 14, 16, 17, 18 and 19 are sustained solely in so far as they raise the issue of the trial court's setting aside of the jury verdict as to issues 16, 17, 20, 21 and supplemental issues C and D without motion and the cause is reversed and remanded to the trial court but only for such further proceedings as the trial court may deem proper in the premises under the proceedings outlined in Rule 301 as to the rendition of judgment non obstante veredicto subsequent to the return of the jury verdict in this cause.